# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8655 | **DATE** | 3/22/2004 |
| **CASE TITLE** | Stenger, et. al. Vs. Leadenhall Bank & Trust Co. Ltd., et.al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, defendants' renewed motion to dismiss is granted. Defendants' alternate motion to dismiss for non conviens is denied as moot. Defendants' motion to strike is granted. Enter Memorandum Opinion and Order. Any pending dates and/or motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | MAR 23 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | | 57 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | | | MAR 23 2004 date mailed notice | |
| MF | courtroom deputy's initials | 2004 MAR 22 9:45 | | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PHILLIP S. STENGER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 02 C 8655 |
| v. ) | |
| ) | Judge John W. Darrah |
| LEADENHALL BANK & TRUST COMPANY ) | |
| LIMITED; a Bahamian limited partnership; ) | |
| AXXESS INTERNATIONAL LIMITED, ) | |
| a Bahamian limited partnership; and ) | |
| AXXESS INTERNATIONAL BAHAMAS ) | |
| LIMITED, a Bahamian limited partnership; ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed suit alleging claims for aiding and abetting fraudulent conveyances, breach of fiduciary duty to warn, negligence, breach of contract, and conspiracy. Currently before the Court are Defendants' Motion to Strike and Defendants' Renewed Motion for Dismissal for Lack of Personal Jurisdiction or, in the Alternative, Under the Doctrine of Forum Non Conveniens.

## BACKGROUND

Phillip S. Stenger and G. James Cleaver were appointed by the Grand Court of the Cayman Islands, as the joint official liquidators of various related entities known as Cash 4 Titles ("C4T"), including Morningstar Ltd., which is an entity incorporated in the Cayman Islands and doing business in the United States. Stenger is also the receiver, appointed at the request of the United States Securities & Exchange Commission, over the beneficial interests of Charles R. Homa, D. Dean Pearson, and Michael Gause, and their related C4T entities. Stenger's mandate as receiver is to marshal, conserve, protect, hold funds, and operate and dispose of any assets constituting

receivership property for the benefit of investors.

Leadenhall Bank & Trust, Ltd is a Bahamian limited partnership that operates a financial institution in the Bahamian Islands. Leadenhall provides credit card and other financial services to residents of the United States, including at least six Illinois residents. Axxess International Ltd. and Axxess International Bahamas Ltd. (collectively "Axxess") are limited partnerships formed in the Bahamas and are partners of Leadenhall, providing credit/debit card services around the world, including the United States and Illinois.

Homa was a resident of Atlanta, Georgia, and the founder and owner of a business enterprise called "Cash 4 Titles." Cash 4 Titles operated exclusively in the United States through C4T Management, Inc. and other related entities (collectively "C4T US"). Cash 4 Titles provided short-term, high-interest loans to borrowers who pledged their motor vehicles as collateral. In 1993, Gause contacted Homa based on a C4T US advertisement in an Atlanta newspaper and became both an investor in and a marketing representative of C4T US. After 1993, Homa remained generally in charge of the C4T US operations, and Gause remained generally in charge of the investor relations and marketing aspects of C4T US.

Shortly after becoming responsible for C4T US investor relations and marketing, Gause developed a multiple-tier marketing enterprise, which eventually used Cayman Island, Bahamian, and United States entities and individuals in a joint venture to defraud investors in C4T US. The instruments used to facilitate investor transactions were promissory notes or bonds issued by second- and third-tier marketing companies owned by individuals other than Homa and Gause.

Joseph Denson was a second-tier marketer, working directly below Gause. Denson's marketing and note-issuing companies were Morning Star and Rolls Royce Ltd., a Bahamian

company. Both Morningstar and Rolls Royce had accounts at Leadenhall. Morningstar was used to receive investor funds into the scheme and, as such, was the conduit company for the flow of investments into the scheme -- a so called "in" company. Rolls Royce was used to pay interest out to investors and, as such, was the "out" company.

Homa, Gause, and Denson created a complicated maze of Cayman Islands and Bahamian companies and corresponding Leadenhall bank accounts, including Morningstar, to be used in receiving investor funds and facilitating inter-bank transfers to assist Gause, Homa, and downline marketers in avoiding the scrutiny of United States regulators while at the same assisting in the perpetuation of a Ponzi scheme. Despite the fact that it knew or should have known that these Cayman Islands and Bahamian companies were being established for fraudulent purposes, including tax fraud, Leadenhall and Axxess nonetheless established bank accounts for these entities and assisted many marketers working below Denson in opening Leadenhall bank accounts and Axxess credit/debit cards for their offshore "entities."

Leadenhall and Axxess understood the functioning of the multiple-tiered marketing scheme and assisted Denson in marketing the scheme by vouching to potential investors regarding the legitimacy of C4T and the Gause/Denson multiple-tiered marketing scheme and actively encouraging individuals to invest in C4T US. Leadenhall and Axxess met with Homa and Gause and fully understood the multi-level marketing scheme. Leadenhall and Axxess also assisted the Ponzi scheme by directly paying interest on many of the notes to which Morningstar and C4T US were obligated by writing checks and making wire-transfer payments to investors from its corporate account in BAC Florida Bank/Popular Bank ("BAC Bank") in Miami, Florida.

In October 1999, the SEC initiated a civil securities fraud action against Gause, Homa, and other marketers involved in the Ponzi scheme. At the SEC's request, Stenger was appointed as receiver in the SEC action. Thereafter, the Grand Court of the Cayman Islands appointed Cleaver and Stenger as joint official liquidators of several Cayman Island companies involved in the fraud, including Morningstar. The liquidators and the receiver are pursuing recovery and accountability actions in order to pay innocent investors and creditors who are owed in excess of one-hundred million dollars through the notes and bonds issued by the various companies in the multi-tiered marketing scheme. This action was filed against Leadenhall and Axxess on behalf of the stockholders in the Gause, Homa, and Denson companies, for the benefit of the investors to whom Gause and Homa companies owe promissory notes or bonds that have not been paid, to hold Leadenhall and Axxess accountable for the damages that resulted to those companies from Leadenhall's and Axxess's actions and omissions.

Plaintiffs allege that this Court has personal jurisdiction over the Defendants based on: (1) Defendants purposefully marketed their financial services to citizens of the United States and to residents of the state of Illinois by providing Leadenhall and Axxess application forms and marketing materials to Denson, knowing Denson would circulate the materials to potential investors in Illinois; (2) Defendants purposely and systematically paid interest on behalf of Morningstar and C4T US companies to investors in Illinois from Leadenhall's corporate account in Florida in the form of checks and wire transfers; (3) Defendants distributed bank credit and debit cards to residents of Illinois, knowing that such cards would be utilized in banking and other financial institutions in Illinois; (4) Defendants are part of a conspiracy to defraud and are, thus, subjected to the personal

jurisdiction of this Court due to the contacts that Denson, Homa, and Gause had with investors in Illinois; and (5) the receivership statutes of 28 U.S.C. §§ 754, 1692.

## ANALYSIS

Initially, Defendants move to strike, pursuant to Federal Rule of Civil Procedure 37, Plaintiffs' Exhibit No. 5 (the "Gause Transcript") that was submitted in support of Plaintiffs' Response to Defendants' Motion to Dismiss.

Pursuant to Federal Rule of Civil Procedure 37, a party that, without substantial justification, fails to disclose information required by Rule, or to amend a prior response as required by Rule, is not permitted to use such evidence at trial, at a hearing, or for a motion. Fed. R. Civ. P. 37(c)(1).

In the instant case, Defendants asked Plaintiffs to identify and produce statements of "any person regarding any of the jurisdictional allegations set forth in the Complaint." On May 30, 2003, Plaintiffs identified James Owen in response to Defendants' request. Pursuant to Court order, Plaintiffs were given a further opportunity to produce all documents on the issue of personal jurisdiction by October 22, 2003. Plaintiffs did not produce any additional statements or amend their previous response.

However, in their response to the instant Motion to Dismiss, Plaintiffs attached excerpts of a May 2, 2002 statement of Michael Gause, which includes statements regarding the personal jurisdiction allegations. By letter dated January 8, 2004, Defendants notified Plaintiffs that their previous answer appeared to be false and requested that Plaintiffs produce Gause's complete statement. Plaintiffs responded that they assumed that Defendants were either provided a copy of Gause's transcript or had access to it during discovery. Plaintiffs did not explain why they had not previously disclosed Gause. Furthermore, Gause's transcript reveals that Plaintiffs had taken

5

Gause's statement on other occasions prior to the close of discovery and that Plaintiffs failed to inform Defendants of these additional statements.

Based on the above, Plaintiffs failed to timely produce statements by Gause that related to the personal jurisdiction issue before the Court. Plaintiffs also failed to offer any justification for their failure to timely produce or identify Gause and his statements. Accordingly, Plaintiffs' Exhibit No. 5 is stricken.

A Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. *See Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). When deciding whether the plaintiff has made a necessary showing, a court can look to affidavits and exhibits submitted by each party. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) (*Turnock*). When determining whether the plaintiff has met the burden of establishing a *prima facie* case of jurisdiction, this Court must take jurisdictional allegations in the complaint as true, unless controverted by the defendant. *See Turnock*, 816 F.2d at 333. Additionally, all factual disputes must be resolved in favor of the plaintiff. *Turnock*, 816 F.2d at 333.

A determination of whether this Court has personal jurisdiction over the non-resident Defendants requires an examination of three sources of law: "(1) state statutory law, (2) state constitutional law, and (3) federal constitutional law." *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) (*RAR*).

Under Illinois law, a defendant is subject to the jurisdiction of its courts if the cause of action arises from several specified acts, including committing a tortious act within the state. 735 ILCS 5/2-209(a)(2). The statute also provides that an Illinois court may exercise jurisdiction on any basis permitted by the state or federal constitution. 735 ILCS 5/2-209(c). Therefore, the statute authorizes

the exercise of personal jurisdiction by the Illinois courts to the fullest constitutional limit; and the statutory analysis collapses into a due process inquiry, and whether the defendant engaged in any of the acts enumerated in the long-arm statute need not be considered by the court. *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Partnership*, 34 F.3d 410, 411 (7th Cir. 1994) *(Colts); Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 834 (N.D.Ill. 2000) *(Euromarket); LaSalle National Bank v. Vitro*, 85 F.Supp.2d 857, 860 (N.D.Ill. 2000); *LFG, LLC. v. Zapata Corp.* 78 F.Supp.2d 731, 735 (N.D. Ill. 1999) *(LFG)*.

The Due Process Clause permits an Illinois court to exercise jurisdiction over a non-resident defendant only if the defendant has had "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940); *Neuman & Assoc. v. Florabelle Flowers*, 15 F.3d 721, 725 (7th Cir. 1994). This determination depends on whether the plaintiff asserts general or specific jurisdiction against the defendant. *RAR*, 107 F.3d at 1277. General jurisdiction requires a showing that the defendant performed "substantial" or "continuous and systematic" activities in the forum state, and specific jurisdiction requires a showing of minimum contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-16 (1984) *(Helicopteros)*.

"General jurisdiction . . . is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum state." *RAR*, 107 F.3d at 1277. A defendant with extensive contacts in a state can be subject generally to the personal jurisdiction of that state's courts. *Helicopteros*, 466 U.S. at 414. A finding that a non-resident defendant is doing business in Illinois

so as to maintain a presence here subjects him to personal jurisdiction of Illinois courts for all matters. *Aetna Cas. & Sur. Co. v. Crowther, Inc.,* 581 N.E.2d 833, 835 (Ill. App. Ct.1991). In order to have general jurisdiction, the business activities of the defendant cannot be inadvertent, trivial or sporadic; they must be intentional, substantial and continuous. *Asset Allocation & Management Co. v. Western Employers Ins. Co.,* 892 F.2d 566, 570 (7th Cir. 1989).

In the instant case, the Defendants are not subject to the general jurisdiction of this Court. Defendants' activities in Illinois were not "substantial" or "continuous and systematic." The only activities by the Defendants directed at Illinois were the mailing of interest checks and credit/debit card statements to Illinois residents. However, only 14 account/card holders, or 0.5% of those who invested in C4T, had an Illinois address. The banking and credit card services provided by the Defendants took place in the Bahamas and were governed by Bahamian law. The Defendants did not maintain any accounts in Illinois, perform any credit card services in Illinois, and did not negotiate any contracts for such services in Illinois. Defendants' minimal activities with Illinois fail to establish general jurisdiction. *See Federated Rural Elec. Ins. Corp. v. Inland Power & Light* Co., 18 F.3d 389, 395 (7th Cir. 1994) (*Federated*) (defendant's activities of sending premium payments to resident in Wisconsin; backing the sale of bonds, some of which were sold to Wisconsin residents; and defendant's communications with Wisconsin resident by mail and phone were insufficient to subject defendant to personal jurisdiction in Wisconsin); *Asset Allocation & Mgmt. Co. v. Western Employees Ins. Co.,* 892 F.2d 566, 570 (7th Cir. 1990) (*Asset*) (payments into Illinois not sufficient to subject payer to personal jurisdiction); *Tri-Meats, Inc. v. NASL Corp.,* 2001 WL 292621 (N.D. Ill. March 26, 2001) (*Tri-Meats*) (wire transfers into Illinois not sufficient to subject transferor to personal jurisdiction).

Specific jurisdiction "refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.'" *RAR*, 107 F.3d at 1277, quoting *Helicopteros* 486 U.S. 408 (1984). To determine whether specific jurisdiction exists, this Court must determine whether the Defendants have "purposefully established minimum contacts within [Illinois]" and whether those contacts would make personal jurisdiction reasonable and fair under the circumstances. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Defendants must have "purposefully availed" itself of the privilege of conducting activities within the forum state, invoking the benefits and protections of its laws such that they would "reasonably anticipate being haled into court there." *Asahi-Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987) (*Asahi-Metal*). The plaintiff must establish that haling the defendant into court is consistent with the Fourteenth Amendment's due process clause. *LFG*, 78 F.Supp.2d at 734.

The due process requirement is met if: (1) the defendant has sufficient minimum contacts with the forum state; (2) the claims asserted arise or result from the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Euromarket*, 96 F.Supp.2d at 834.

A defendant need not be physically present in the jurisdiction to have sufficient minimum contacts if the defendant does something by which he purposefully availed himself the privilege of conducting activities in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 252-54 (1958). The critical inquiry is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Here, the Defendants allegedly provided materials that could be used to solicit business to a third party. However, there are no allegations that such materials were ever distributed or used in

Illinois. Plaintiffs also allege that Defendants mailed interest checks and credit/debit card statements to Illinois residents. However, as mentioned above, this involved only 14 account/card holders, or 0.5% of the those who invested in C4T, who have an Illinois address. These minimal activities are insufficient bases for jurisdiction. *See Federated*, 18 F.3d at 395 (mailing of payments, communication by phone and mail, and backing of sale of bonds insufficient contacts for purposes of due process); *Asset*, 892 F.2d at 570 (payments into Illinois not sufficient to subject payer to personal jurisdiction); *Tri-Meats*, 2001 WL 292621 at * 7 (wire transfers into Illinois not sufficient to subject transferor to personal jurisdiction).

Furthermore, it would be unreasonable to bring the Defendants into Illinois to defend the litigation.

The only alleged activity by the Defendants related to the present lawsuit toward Illinois is the payment of interest to about one-half of one percent of all of the investors injured by the alleged Ponzi scheme. The Defendants never actively sought any type of business relationship with residents of Illinois and maintain no offices or personnel in Illinois. Other than the interest payments to these few investors, no other activities related to the claims against the Defendants took place in Illinois or were connected in any manner to Illinois. Furthermore, none of the parties are residents of Illinois, and none have ties to Illinois. In addition, the burden of litigating in Illinois would also be substantial because many of the prospective witnesses and most of the evidence are located in the Bahamas.

Based on the above, Plaintiffs have failed to demonstrate a *prima facie* case that forcing the Defendants to defend a lawsuit in Illinois does not violate the due process requirement of specific jurisdiction.

Plaintiffs also contend that jurisdiction lies in this Court because the Defendants were part of a conspiracy.

Under the "conspiracy theory of jurisdiction," the Court may assert jurisdiction over all co-conspirators based on their involvement in a conspiracy that occurred within the forum. *See Textor v. Board of Regents of Northern Ill. Univ.*, 711 F.2d 1387, 1392-93 (7th Cir. 1983) (*Textor*); *Kohler Co. v. Kohler Int'l, Ltd.*, 196 F. Supp. 2d 690, 696-97 (N.D. Ill. 2002). Under this theory, the plaintiff must make a *prima facie* showing of a conspiracy and a substantial act in furtherance of the conspiracy in the forum state. *See Textor*, 711 F.2d at 1393. The substantial conspiratorial act occurring in the forum state must be "sufficient to establish minimum contacts with and confer jurisdiction over [the] nonresident defendants." *Zivitz v. Greenburg*, 1999 WL 984397 (N.D. Ill. Oct. 25, 1999).

Here, Plaintiffs have pled that the Defendants were in a conspiracy with Homa, Gause, Denson, and C4T US to defraud investors and fraudulently convey funds from C4T US to Morningstar. The allegations summarized above sufficiently plead a conspiracy by these actors. The Defendants' activities in furtherance of the conspiracy in Illinois are the repatriating of the Illinois investor's interest through the mailing of checks or by crediting the credit/debit card accounts of the Illinois investors. However, these activities, at the most, involved 0.5% of the investors that were allegedly damaged by Defendants' conduct. These minimal activities do not constitute a substantial act in furtherance of the conspiracy. *See Zivitz v. Greenburg*, 1999 WL 984397 (N.D. Ill. Oct. 25, 1999); *Asset*, 892 F.2d at 570. Accordingly, personal jurisdiction over the present Defendants cannot be based on the alleged conspiracy.

11

Lastly, Plaintiffs contend that personal jurisdiction over the nonresident Defendants can be based on the receivership statutes because such statutes authorize extraterritorial service of process in cases brought by receivers.

Federal Rule of Civil Procedure 4(k) provides, in pertinent part, that service of summons is effective to establish personal jurisdiction over a defendant who could be subject to jurisdiction in a court of the forum state when service is authorized by a federal. *See* Fed. R. Civ. P. 4(k)(1)(A) and (D). Plaintiffs argue that the receivership statutes 28 U.S.C. §§ 754 and 1692 provide for nationwide service and, thus, personal jurisdiction over the nonresident Defendants.

Section 754 provides:

> A receiver in any civil action or proceeding involving property, real or personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take position thereof.
>
> * * *
>
> Such receiver shall ... file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

28 U.S.C. § 754. This statute does not confer extraterritorial *in personam* jurisdiction; instead, it permits the receiver to obtain *in rem* jurisdiction over receivership property. *See Stenger v. World Harvest Church, Inc.*, 2003 WL 22048047 (N.D. Ill. Aug. 2, 2003) (*World Harvest*). Furthermore, Section 754 does not authorize extraterritorial service of process; therefore, it is does not confer jurisdiction pursuant to Rule 4(k)(1)(D). *See World Harvest*, 2003 WL 22048047 at *2.

Section 1692, provides in pertinent part:

12

> [i]n proceedings in a district court where a receiver is appointed for property, real, personal or mixed, situated in different districts, process may issue and be executed in any such districts as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

29 U.S.C. § 1692. This section provides for the issuance and execution of process; however, it does not mention service of process. Contrary to Section 1692, other statutes that have been construed to permit nationwide service of process include language not found in Section 1692. *See* 18 U.S.C. § 1965(b) ("process may be served in any judicial district of the United States"); 28 U.S.C. § 1697 ("process, other than subpoenas, may be served at any place within the United States"); 15 U.S.C. § 78aa (process "may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found"). Section 1692 provides no similar language providing for nationwide service of process and, therefore, does not create personal jurisdiction under Rule 4(k)(1)(D). *See World Harvest*, 2003 WL 22048047 at *3.

Based on the above, the receivership statutes fail to establish personal jurisdiction over the Defendants.

## CONCLUSION

For the forgoing reasons, Plaintiffs have not established a *prima facie* case for personal jurisdiction.

Accordingly, Defendants' Renewed Motion to Dismiss is granted. Defendants' alternate Motion to Dismiss for Forum Non Conviens is denied as moot. Defendants' Motion to Strike is granted.

Dated: March 19, 2004

JOHN W. DARRAH
United States District Judge

14